| | ) | |
|---|---|---|
| **LAVON S. PRESSLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **CAROMONT HEALTH, INC. and** | ) | |
| **GASTON MEMORIAL HOSPITAL, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER is before the Court on Defendants CaroMont Health, Inc. and Gaston Memorial Hospital, Inc.'s[1] Motion for Summary Judgment (Doc. No. 38) and Plaintiff Lavon Pressley's cross Motion for Summary Judgment (Doc. No. 41). The Court heard argument on these and other pending motions in the above-captioned matter on November 1, 2010. After hearing argument and reviewing the motions, supporting memoranda and affidavits, and for the reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## I. Background

Plaintiff filed suit alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. Viewing the facts in the light most favorable to Plaintiff, the uncontroverted facts are the following:

At the time of Plaintiff's termination from Gaston Memorial Hospital, Inc. ("Gaston

---

[1] Defendants deny that "CaroMont Healthcare Services, Inc.," who Plaintiff also named as a co-defendant, is a legal entity or a name under which either CaroMont Health, Inc. or Gaston Memorial Hospital does business. In the absence of any evidence to the contrary, the Court dismisses "CaroMont Healthcare Services, Inc." from this action.

Memorial"), she was fifty-two (52) years old.  Plaintiff's employment at Gaston Memorial was terminated after she refused to sign a release of information upon referral to an employee counseling program (referred to as an "employee action program" or "EAP") by her supervisor.[2]  The release of information would have allowed McLaughlin Young Employee Services ("MYES"), the consulting firm that would administer the EAP, to share information with Defendants so they could monitor Plaintiff's compliance with the program.

Referral to the EAP was made after Plaintiff appeared at work at a time she was not scheduled, without prior approval (ostensibly to make up for lost hours) and occupied the work area of a co-worker who was scheduled to work that shift.  Plaintiff's supervisor had a policy of permitting Prep/Scan Imaging Specialists, such as Plaintiff, to work on unscheduled days when authorized to do so.  Prior authorization was important as workloads fluctuated, and it was sometimes difficult for employees to maintain a full workload when too many other employees were on shift.  (Curtis Aff. ¶ 4).  Plaintiff's supervisor determined disciplinary action was necessary as Plaintiff had caused "friction" in the workplace before, including conflicts with her co-workers.  While Plaintiff contends that her co-workers lied about her relationship with them, Plaintiff admitted at oral argument that her co-workers did in fact complain about her to her supervisors.  According to CaroMont's Disciplinary Policy Grid, dismissal was an appropriate sanction for Plaintiff's conduct since she had been written up before for "causing friction" and had committed multiple violations in the instant incident.  Instead, Plaintiff's supervisors offered her a suspension and

_____

[2] Defendants assert that Plaintiff was not "fired," but instead she was warned that if she failed to sign and return the release by March 18, 2009, she would be considered to have resigned.  By failing to return the release by that deadline, Defendants maintain that Plaintiff affirmatively resigned on her own volition.  (Doc. No. 39 at 13).  The Court need not determine whether Plaintiff was fired or resigned.  For purposes of resolving these cross motions for summary judgment, the Court presumes Plaintiff suffered an adverse action.

counseling, which she declined by refusing to sign the EAP release of information.

While Plaintiff was under suspension, but prior to her discharge, she contacted Mr. Wayne Shovelin, Defendants' President, to contest her suspension, arguing that the EAP program and MYES' limited release were unlawful because they violated her privacy.[3]  Mr. Shovelin referred Plaintiff to Defendants' human resources officers, who determined her suspension was warranted and the EAP referral would stand.  Plaintiff also called Defendants' employee hotline to lodge her dissatisfaction with her suspension.  Plaintiff's first allegations of age discrimination were not made until after she was terminated, on or about March 23, 2009, when she appealed her termination to Ms. Andrea Serra, the Vice President of Medical Records, who found no evidence of discrimination and affirmed Plaintiff's discharge.  Plaintiff's position was not filled for some time, but rather other employees' schedules were modified to fill Plaintiff's duties.  To the extent that Plaintiff was replaced by Gaston Memorial Hospital, more than a year after she was terminated, it was with a person fifty-one (51) years old, substantially the same age as Plaintiff when she was terminated. (Baucom Aff. ¶ 24).

## II.  Discussion

Rule 56(c) of the Federal Rules of Civil Procedure directs the Court to enter summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."

Although the moving party bears the initial responsibility for informing the Court of the basis for its motion and identifying what evidence demonstrates the absence of a genuine issue of material

---

[3] While at oral argument, Plaintiff asserted Defendants violated her medical privacy rights as explained herein, but Plaintiff never raised this issue in a pleading before this Court.

fact, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The facts are required to be viewed in the light most favorable to the non-moving party, and where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009). The Court issued a Roseboro Notice on April 30, 2010, notifying *pro se* Plaintiff of the burden she bears in confronting a Motion for Summary Judgment. (Doc. No. 42).

In order to survive Defendants' Motion for Summary Judgment, Plaintiff must present either direct or circumstantial evidence that she was terminated as a result of her age. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). It is not enough that Plaintiff present evidence that age was one of many reasons why Defendants terminated her; she must present evidence that age was the "but-for" cause of Defendants' decision to terminate. Gross v. FBL Fin. Serv., Inc., 129 S. Ct. 2343, 2351 (2009).[4]

When directly asked by the Court what evidence of age discrimination she has, Plaintiff admitted she had none. Plaintiff has presented neither a "smoking gun," nor has she produced any evidence indicating that she was replaced by anyone that was younger and less qualified than her.

In the absence of any direct evidence of age discrimination, Plaintiff must rely on the burden-

---

[4] Although Gross applies, by its posture, to the burden of persuasion borne by plaintiff at *trial*, 129 S.Ct. at 2346, it follows that plaintiff must present some evidence of but-for causation in order to survive summary judgment, otherwise no genuine issue of fact would exist for trial, and defendants would be entitled to judgment as a matter of law. Despite the uncertainty in the lower courts as to whether the Gross rule applies beyond the context of trial, see, e.g., Cartree v. Wilbur Smith Assoc., Inc., No. 3:08-4132-JFA-PJG, 2010 WL 1052082 at *3 (D.S.C. March 22, 2010) (collecting cases), the Court requires Plaintiff to show some evidence of but-for causation to survive Defendants' Motion for Summary Judgment. See Jones v. Oklahoma City Pub. Sch., 617 F.3d 1273, 1277 (10th Cir. 2010); Bodkin v. Town of Strasburg, No. 09-2167, 2010 WL 2640461 at *2 (4th Cir. June 29, 2010).

shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973) in order to avert summary judgment. Hill, 354 F.3d at 285; see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996) (tacitly approving the Fourth Circuit's application of the McDonnell Douglas framework to age discrimination claims); Jones v. Oklahoma City Pub. Sch., 617 F.3d 1273, 1278 (10th Cir. 2010) (holding that plaintiffs may still rely on the McDonnell Douglas framework to survive summary judgment in the wake of Gross); Bodkin v. Town of Strasburg, No. 09-2167, 2010 WL 2640461 (4th Cir. June 29, 2010) (same). Under the McDonnell Douglas framework, Plaintiff first bears the burden of establishing a *prima facie* case of age discrimination, at which point the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the proffered reason for her discharge was actually pretextual. See, e.g., Hill, 354 F.3d at 285. In order to make out a *prima facie* case of discrimination, Plaintiff must present sufficient evidence to create a triable issue as to each of the following elements:

> (1) she is a member of a protected class [for a claim made under ADEA, she must be 40 years or older]; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Id.

Plaintiff fails to make this showing. Plaintiff has established that she was within the protected class of ADEA and that she was terminated on or about March 18, 2009. As to the fourth element, the record shows that Plaintiff was eventually replaced by a fifty-one-year-old woman. (Baucom Aff. ¶ 24). The Fourth Circuit has recognized a possible exception to this element that allows a claim to go forward even when a plaintiff's position was filled by someone within the protected group. Lowry v. Bedford Cnty. Sch. Bd., No. 98-1165, 1999 WL 507137 at *2 (4th Cir.

July 19, 1999) (unpublished table opinion) (citing <u>Brown v. McLean</u>, 159 F.3d 898, 905 (4th Cir. 1998)).  The exception recognized by the Fourth Circuit is present:

> (1) in age discrimination cases where a plaintiff is replaced by a younger person who is also within the protected class; (2) where there has been a significant period of time between the adverse action against [the] plaintiff and the decision to hire a replacement also within the protected class; and (3) where hiring another person within the protected class was calculated to disguise discrimination against [the] plaintiff.

<u>Id.</u>  Here, Plaintiff's replacement was hired a full year after she was terminated and while litigation was on-going, in March 2010.  (Baucom Aff. ¶ 24).  However, Plaintiff has presented no evidence to suggest that her replacement was hired in an effort to "disguise" the alleged discrimination against her and reaching such a conclusion would require the Court to make an unsupported assumption.

Plaintiff's *prima facie* case also fails because Plaintiff has not provided any evidence supporting the third element, that she was meeting her employer's legitimate expectations at the time she was terminated.  Plaintiff's own statements are not sufficient to satisfy this element.  <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003).  Instead, Plaintiff must provide some independent verification that she was meeting Defendants' legitimate expectations.  <u>Id.</u> at 149-50.  While there is nothing present in the record to indicate that the *quality* of Plaintiff's work was sub-par, there is ample evidence indicating that she repeatedly violated Defendants' employee guidelines and policies by causing problems with her co-workers and by working extra shifts without her supervisor's approval.  (Curtis Aff. ¶¶ 5-7, 12, 21-22; Baucom Aff. ¶¶ 4-9, 16, 19-21).  Additionally, although Plaintiff's pattern of behavior made her eligible for termination under Defendants' disciplinary guidelines, she was offered a suspension and counseling, which she apparently refused.  (Baucom Aff. Ex. M).  An employee that fails to comply with her employer's policies governing on-the-job behavior and refuses counseling does not meet that employer's legitimate expectations of employee

conduct.  <u>Mianegaz v. Hyatt Corp.</u>, 319 F.Supp.2d 13, 21 (D.D.C. 2004).

Even assuming, *arguendo*, that Plaintiff had successfully established a *prima facie* case and shifted the burden to Defendants, Defendants have provided a legitimate, non-discriminatory explanation for their decision to terminate Plaintiff.  Defendants state Plaintiff was terminated because she: 1) repeatedly refused to follow rules regarding hours worked and workstation assignments; 2) caused frequent conflicts with her co-workers; and 3) refused to attend the required EAP counseling.  Defendants maintain Plaintiff had repeatedly violated their employee guidelines and policies and refused employee counseling, an explicit condition of her continued employment.  Plaintiff has made no showing that Defendants' explanation was merely pretextual.  In short, Plaintiff has provided no evidence sufficient to create a genuine issue of material fact that her age was the "but-for" cause of Defendants' decision to terminate her.

The only evidence Plaintiff has presented that speaks to her discrimination claim is a copy of the Right to Sue Notice issued by the Equal Employment Opportunity Commission ("EEOC") and Conclusions of Law made by the North Carolina Employment Security Commission ("ESC").  Neither of these are probative of her claim.  The Right to Sue Notice is a jurisdictional prerequisite demonstrating that she has exhausted her administrative remedies, but is not itself evidence of discriminatory conduct.  The North Carolina ESC's Conclusions of Law are inadmissible for the purposes of this action under North Carolina General Statute § 96-4(t)(8).

Plaintiff has also failed to present any evidence to support her claim for retaliation under ADEA.  Retaliation claims, like age discrimination claims, are subject to the same <u>McDonnell Douglas</u> burden-shifting analysis.  <u>Laber v. Harvey</u>, 438 F.3d 404, 432 (4th Cir. 2006).  For a *prima facie* case of retaliation, Plaintiff must demonstrate: 1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) there was a causal link between the protected activity

and the adverse action.  Id. at 432.  Plaintiff cannot satisfy the third element and thus cannot shift the burden to Defendants to offer a nondiscriminatory explanation.

In order to show that a causal connection exists between Plaintiff engaging in a protected activity and being terminated, she must demonstrate she would not have been terminated but for the assertion of her ADEA rights.  Wolf v. Coca-Cola Co., 200 F.3d 1337, 1343 (11th Cir. 2000).  Even assuming that Plaintiff actually engaged in a protected activity for the purposes of a retaliation claim by either contacting Defendants' President, calling the CaroMont employee hotline during her suspension, or by filing an allegation of discrimination after her termination – an assumption that is far from certain – Plaintiff has provided no evidence to establish a causal link between any of these activities and her termination.  The record indicates her allegations of discrimination and preferential treatment were first made *after* she was already terminated.  (McCraw Aff. ¶ 5; Serra Aff. ¶ 6).  These allegations cannot be the "but-for" cause of her termination because the allegations were not made – and thus Defendants were unaware of her age discrimination grievance – until after she was terminated.  See Nagle v. Village of Calumet Park, 554 F.3d 1106, 1122 (7th Cir. 2009).

Even if Plaintiff had established a *prima facie* case of retaliation, she has failed to rebut Defendants' legitimate, non-retaliatory explanation that she was terminated due to her record of disciplinary problems and failure to submit to counseling.  Plaintiff has not presented any evidence sufficient to create a triable issue that she suffered retaliation.

At oral argument, Plaintiff conceded she had no evidence that Defendants retaliated against her for raising an age discrimination complaint after her termination.  Instead, she argues that she was retaliated against because she challenged her referral to EAP and her continued employment being conditioned on signing MYES' limited release of EAP information.  Specifically, Plaintiff argues that, because Defendants are health service providers, they were prohibited from either

8

soliciting or releasing any medical information under the Health Insurance Portability and Accountability Act ("HIPAA"). During argument, it appeared to the Court as if Plaintiff conflated Defendants' roles as health service providers, prohibited from sharing the medical information of their patients under HIPAA and their own internal policies, with Defendants' role as employer, permitted to seek confirmation of Plaintiff's compliance with the EAP, a prescribed condition of her continued employment.

Whatever the merits of Plaintiff's claim of retaliation for challenging the release of her information under HIPAA, the Court will not consider them at this late date. Plaintiff's specific HIPAA allegation was raised for the first time at the Court's November 1, 2010 summary judgment hearing. When the Court attempted to explain to Plaintiff that this allegation could not be raised at this late stage of the proceeding but needed to have been contained in the Complaint or an amended complaint, Plaintiff responded she had alleged it in her Complaint by referencing Defendants' "practices, policies, customs, and usage." (Compl. ¶ 18). The Court is unconvinced. First, the breadth of the activity encompassed by the phrase "practices, policies, customs, and usage" fails to provide Defendants with any notice that they would be facing a claim under HIPAA or a claim that they inappropriately coerced disclosure of Plaintiff's medical information. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Second, even if Defendants had sufficient notice, it is unlikely this portion of Plaintiff's Complaint would have survived a Rule 12(b)(6) motion. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting Twombly, 550 U.S. at 570)). Although the Court must liberally construe a *pro se* plaintiff's complaint, it need not

re-write Plaintiff's Complaint to state a facially plausible claim for relief. See, e.g., Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

To the extent Plaintiff alleges additional claims for relief in her Motion for Summary Judgment, apart from the discrimination and retaliation claims that were originally alleged in her Complaint, these claims are stricken. Although Rule 15(a)(2) of the Federal Rules of Civil Procedure encourages that leave to amend pleadings be freely given, the Court need not allow Plaintiff to allege new claims at this late stage of the litigation, after discovery has closed, and without formal motion to amend, as it would unfairly prejudice defendants. Hardy v. Bennett, No. 5:06-ct-3107, 2008 WL 5640099 at * 4 (E.D.N.C. Feb. 1, 2008).

### III. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 38) is hereby GRANTED. For the same reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. No. 41) is DENIED.

The Clerk is directed to mail a copy of this Order to *pro se* Plaintiff at her address of record.

IT IS SO ORDERED.

Signed: November 3, 2010

Frank D. Whitney
United States District Judge